UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| TANA L. MURPHY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:15CV00069NCC |
| ) | |
| NANCY A. BERRYHILL,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Tana L. Murphy ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* Plaintiff has filed a brief in support of the Complaint (Doc. 17) and Defendant has filed a brief in support of the Answer (Doc. 22). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 11).

## I. PROCEDURAL HISTORY

Plaintiff filed her applications for DIB and SSI on July 12, 2012 (Tr. 226-36). Plaintiff was initially denied on September 19, 2012, and she filed a Request for Hearing before an Administrative Law Judge ("ALJ") on October 5, 2012 (Tr. 142-51). After a hearing, by

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

decision dated March 31, 2014, the ALJ found Plaintiff not disabled (Tr. 15-41). On August 31, 2015, the Appeals Council denied Plaintiff's request for review (Tr. 1-6). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2015, and had not engaged in substantial gainful activity since May 1, 2010, the alleged onset date of disability (Tr. 20). The ALJ found Plaintiff has the severe impairments of minimal lower lumbar degenerative facet changes, diabetes mellitus, polycystic ovarian syndrome, and bipolar II disorder, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 21-23).

After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and 416.967(a) with the following limitations (Tr. 23). She is unable to perform work that requires climbing on ropes, ladders, or scaffolds; can perform no more than occasional climbing on ramps and stairs, and no more than occasional stooping, kneeling, crouching, or crawling (*Id.*). She should avoid concentrated exposure to extreme cold, vibration, and work hazards such as unprotected heights and being around dangerous moving machinery (Tr. 23-24). She is able to understand, remember and carry out simple instructions consistent with unskilled work, perform only simple decision making related to basic work functions, and tolerate only minor infrequent changes within the workplace (Tr. 24). She can tolerate only occasional contact with the general public (*Id.*). She also requires a sit stand option allowing a change in position every 30 to 60 minutes for a few minutes at a time while remaining at the work station (*Id.*). The ALJ

found Plaintiff unable to perform any past relevant work, but that there are jobs that exist in significant numbers in the national economy that she can perform, including document preparer, ampoule sealer, and assembly small plastic products (Tr. 32-33). Thus, the ALJ concluded that a finding of "not disabled" was appropriate (Tr. 33). Plaintiff appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

## III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d).

3

If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's

conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Cox*, 495 F.3d at 617. Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

## IV. DISCUSSION

In her appeal of the Commissioner's decision, Plaintiff raises two issues. First, Plaintiff alleges the ALJ failed to properly evaluate the opinions of Plaintiff's treating physician, Dr. Luvell Glanton, and Plaintiff's mental healthcare provider, Carol Greening (Doc. 17 at 7). Second, Plaintiff argues that although the ALJ assigns "great weight" to the assessment by Dr. Lyle Clark, she fails to discuss the observations incorporated therein nor does she incorporate them into the RFC (*Id.* at 10). For the following reasons, the Court finds that Plaintiff's arguments are without merit, and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

## A. The Opinion of Dr. Luvell Glanton

First, Plaintiff asserts that the ALJ failed to properly consider the opinion of Dr. Luvell Glanton ("Dr. Glanton"), Plaintiff's treating physician.[2] In a Medical Source Statement dated January 10, 2014, Dr. Glanton opined the maximum that Plaintiff could stand and walk during an 8-hour day was about 2 hours and the maximum she could sit during an 8-hour day was about 4 hours (Tr. 724). He also indicated that Plaintiff would need to lie down at unpredictable intervals two to three times during an 8 hour working shift (*Id.*). She could never twist, crouch or climb ladders and she could only occasionally stoop or climb stairs (Tr. 725). He further opined that Plaintiff would be absent from work about four days per month (Tr. 726).

"A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Reece v. Colvin*, No. 15-2460, 2016 WL 4446109, at *3 (8th Cir. Aug. 24, 2016) (internal quotations omitted). "Although a treating physician's opinion is usually entitled to great

---

[2] The Parties do not dispute that Dr. Glanton is Plaintiff's treating physician (*See* Doc. 17 at 8 and Doc. 22 at 12).

6

weight, it 'do[es] not automatically control, since the record must be evaluated as a whole.'" *Id.* (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "A treating physician's own inconsistency may undermine his opinion and diminish or eliminate the weight given his opinions." *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015) (internal quotation marks omitted). Whether the ALJ gives the opinion of a treating physician great or little weight, the ALJ must give good reasons for doing so. *Prosch*, 201 F.3d at 1013 (citing 20 C.F.R. § 404.1527(d)(2)).

The Court finds that the ALJ gave proper weight to the opinion of Dr. Glanton. The ALJ afforded Dr. Glanton's opinion "little weight," finding Dr. Glanton's opinion "not well-supported or consistent with other substantial evidence of record" (Tr. 30). She also determined that the limitations noted by Dr. Glanton were "excessive and not supported by the objective evidence" (*Id.*). In doing so, the ALJ explained that diagnostic imaging did not justify the degree of limitation suggested by Dr. Glanton in his opinion, and Dr. Glanton's notes indicated minimum objective findings to support Plaintiff's complaints. *See Cline v. Colvin*, 771 F.3d 1098, 1104 (8th Cir. 2014) (Commissioner may give treating physician's opinion less deference when it is based on claimant's subjective complaints rather than objective medical evidence). Indeed, x-rays of the Plaintiff's spine from January 2010 show "no acute bony abnormalities" (Tr. 455); an MRI of the Plaintiff's spine from March 2010 is largely normal and shows "[n]o disc herniation and no significant central canal, lateral recess, or neural foraminal stenosis" (Tr. 449-50); x-rays of Plaintiff's spine and hips from November 2012 were also negative (Tr. 673-74); an MRI from January 2013 indicates mild lower lumber degenerative facet changes, but no disc herniation, canal stenosis, or foraminal stenosis at any level (Tr. 670); and an MRI in May 2013 shows no acute fracture or marrow edema, and no significant degenerative disc disease or

7

canal stenosis (Tr. 847). Similarly, Plaintiff's medical records support the ALJ's detailed analysis and conclusion that the clinical signs of Plaintiff's back pain were minimal (Tr. 26). Although Plaintiff frequently reported lower back pain to her physicians, her physical exams and other testing was largely normal (*See, e.g.,* Tr. 682-83 (normal nerve conduction study), 1029 (no swelling, normal sensation, normal reflexes), 1053 (positive tenderness to palpation at L2-S1 midline and in left paravertebral region, but no obvious step-offs or deformities noted, no saddle anesthesia noted, and bilateral lower 70s strength intact)). The ALJ also indicated that Dr. Glanton intended to decrease Plaintiff's pain medication dosage (Tr. 30). *See also* Tr. 1252 ("I will start to decrease narcotics."). To the extent the Plaintiff identifies records that support Plaintiff's allegations, "[i]f substantial evidence supports the decision, then we may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if we may have reached a different outcome." *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

Further, the ALJ noted that Plaintiff's treatment for her back pain was conservative in nature; "there is no evidence of treatment with a pain specialist through 2010 or 2011" and "there is no evidence of any treatment for back pain for this until November 2012, nearly two and a half years" following Plaintiff's initial incident in 2010 (Tr. 25). *Kamann v. Colvin*, 721 F.3d 945, 950-51 (8th Cir. 2012) (noting that the ALJ properly considered that the claimant was seen "relatively infrequently for his impairments despite his allegations of disabling symptoms"); *Casey v. Astrue*, 503 F.3d 687, 693 (8th Cir. 2007) (noting that the claimant sought treatment "far less frequently than one would expect based on the [symptoms] that [he] allege[d]").

Finally, as is the case here, "[i]t is appropriate to give little weight to statements of opinion by a treating physician that consist of nothing more than vague, conclusory statements." *Swarnes v. Astrue*, Civ. No. 08–5025–KES, 2009 WL 454930, at *11 (D.S.D. Feb. 23, 2009)

(citation omitted); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (finding that the ALJ properly discounted a treating physician's opinion where it consisted of checklist forms, cited no medical evidence, and provided little to no elaboration).

**B. The Opinions of Carol Greening**

Next, Plaintiff asserts the ALJ failed to properly weight the opinions of Carol Greening ("Ms. Greening"), a Clinical Nurse Specialist ("CNS") and Plaintiff's primary mental health provider. Ms. Greening completed two nearly identical Medical Source Statements—one dated October 25, 2012 (Tr. 629-31) and another dated December 26, 2013 (Tr. 632-34).

In her Medical Source Statement dated October 25, 2012, Ms. Greening opined: Plaintiff's ability to understand, remember, and carry out instructions is affected by her impairment; she has mild restrictions on her ability to understand and remember simple instructions, carry out simple instructions, and to make judgments on simple work-related decisions; and Plaintiff has moderate restriction on her ability to understand and remember complex instructions, carry out complex instructions, and to make judgments on complex work-related decisions (Tr. 629). Ms. Greening identified Plaintiff's inability to multitask as the factor supporting her assessment (*Id.*). Ms. Greening further opined that Plaintiff would have marked restriction on her ability to interact appropriately with the public, interact appropriately with supervisor(s), interact appropriately with co-workers, and respond appropriately to usual work situations and to changes in a routine work setting (Tr. 630). Ms. Greening indicated that these restrictions were supported by Plaintiff's inability to be around the public and her diagnosis of Bipolar II disorder (*Id.*). Ms. Greening also noted that Plaintiff was in special education classes and indicated that Plaintiff said she "couldn't get it" (*Id.*). Finally, Ms. Greening opined that

9

Plaintiff could not manage benefits in her own best interest, noting that her "mother manages her money" (Tr. 631).

The Medical Source Statement dated December 26, 2013 appears to be the same as the October 25, 2012 statement, but with additional notes added to the prior statement (Tr. 632-34). Ms. Greening does not indicate any change in Plaintiff's abilities to understand, remember, and carry out instructions or the ability to make judgments on work-related decisions (Tr. 632) nor does she modify her opinion regarding Plaintiff's ability to interact with the public, supervisor(s), co-workers, or to respond appropriately to unusual work situations and to changes in a routine works setting (Tr. 633). However, Ms. Greening does add additional notes regarding the factors supporting her assessments, specifically that there is "no change"; Plaintiff is "still unable to multitask"; and "would have difficulty in a work environment" (Tr. 632). Ms. Greening also opines that Plaintiff has been compliant with treatment and her mood is variable but that she is "still not able to work" (Tr. 633). Ms. Greening additionally indicates that Plaintiff's "L.D."[3] remains a significant issue for her and that there is "no change" regarding her psychiatric evaluation (*Id.*).

The Court finds that the ALJ gave proper weight to the opinions of Ms. Greening. As a preliminary matter, while the ALJ initially notes that there are two separate reports from Ms. Greening, she later refers to the opinions as "the report." The Court finds this typographical error harmless and especially so in this situation where Ms. Greening's opinions are similar and the second report merely encompasses additional handwritten notes on the first report. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996) ("An arguable deficiency in opinion-writing technique

---

[3] Although Ms. Greening does not clarify in her opinion what L.D. stands for, considering the context of the note—it was added after Ms. Greening's previous notes regarding Plaintiff's need for special education classes in school—the Court construes L.D. to be Plaintiff's learning disability.

is not a sufficient reason for setting aside an administrative finding where the deficiency probably had no practical effect on the outcome of the case"). The ALJ afforded the "report . . . only partial weight" (Tr. 30). Specifically, the ALJ first determined that while "Ms. Greening is not an acceptable medical source, her report must be considered per Social Security Ruling 06-03p in terms of the severity of the claimant's impairments, and how those impairments affect the claimant's ability to function" (*Id.*). The ALJ then continued, indicating that she agreed with Ms. Greening's assessment regarding the difficulty Plaintiff has performing complex work and dealing with others (*Id.*). However, the ALJ found that "the degree of limitation noted is out of proportion with the generally normal objective findings noted in Ms. Greening[']s clinic notes[,] . . . GAF scores in the mild range, and the claimant's conservative treatment history" (*Id.*).

First, an ALJ may discount the opinion of a medical source or a nonmedical source if that opinion is inconsistent with that source's own treatment notes. *See Raney v. Barnhart,* 396 F.3d 1007, 1010 (8th Cir. 2005) (providing that in considering the opinions of a medical source that is not an "acceptable medical source," an "ALJ has more discretion and is permitted to consider any inconsistencies found within the record."). Here, the ALJ notes that Ms. Greening's opinions are inconsistent with her own clinical notes (Tr. 30). Indeed, Ms. Greening first saw Plaintiff in May 2012 for follow-up and assigned Plaintiff a Global Assessment of Functioning ("GAF")[4] Score of 60, noting Plaintiff self-reported issues with her symptoms of anxiety, and

---

[4] Global assessment of functioning (GAF) is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. *See Diagnostic and Statistical Manual of Mental Disorders, DSM-IV*, 32-34 (4th ed. rev. 2000). Expressed in terms of degree of severity of symptoms or functional impairment, GAF scores of 31 to 40 represent "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood," 41 to 50 represents "serious," scores of 51 to 60 represent "moderate," scores of 61 to 70 represent "mild," and scores of 90 or higher represent absent or minimal symptoms of impairment. *Id.* at 32. *See also Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010) ("[A] GAF score of 65 [or 70] . . . reflects 'some mild symptoms (e.g. depressed mood or mild insomnia) OR some difficulty in

edgy and irritable mood (Tr. 603). In subsequent appointments, however, Plaintiff reported that she "is coping effectively" and the "medications treated symptoms effectively" (Tr. 608). Ms. Greening's clinical notes also indicate that Plaintiff was generally "alert and oriented," presented with adequate hygiene and dress, and had a pleasant and cooperative demeanor during their visits (*See* Tr. 603, 606, 608). Additionally, although Plaintiff's GAF scores fluctuated, they generally improved as Plaintiff's treatment progressed (*See, e.g.,* Tr. 603 (GAF=60), 606 (GAF=65), 608 (GAF=70), 611 (GAF=65)).

Second, other evidence of record also supports the ALJ's decision to afford partial weight to Ms. Greening's opinion. Specifically, as addressed in more detail below, the ALJ assigned "great weight" to the GAF score of 55 assigned by Dr. Lyle Clark ("Dr. Clark") on December 12, 2011, finding it consistent with evidence showing that Plaintiff has no more than moderate limitations as a result of her mental impairments (Tr. 30, 489). Indeed, Dr. Clark's notes indicate that although Plaintiff "has problems consistent with moderate difficulty in social and occupational functioning," she was "alert and oriented to person, place, time, and situation," dressed appropriately, and "pleasant and cooperative" (Tr. 489). The ALJ also considered the opinion of Dr. Mark Altomari, Ph.D. ("Dr. Altomari"), the state agency psychologist (Tr. 30). Dr. Altomari reviewed the evidence of record in September 2012 and found Plaintiff to be moderately limited in her ability to understand and remember detailed instructions, to carry out detailed instructions, to interact appropriately with the general public, and to respond

---

social, occupational, or school functioning . . . but generally functioning pretty well, has some meaningful interpersonal relationships.'") (quoting *Kohler v. Astrue*, 546 F.3d 260, 263 (2d Cir. 2008) (quoting *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. rev. 2000) (alterations in original). *See also Goff*, 421 F.3d at 789, 791, 793 (affirming where court held GAF of 58 was inconsistent with doctor's opinion that claimant suffered from extreme limitations; GAF scores of 51-60 supported ALJ's limitation to simple, routine, repetitive work).

appropriately to changes in the work setting" (Tr. 123-125). The ALJ found this opinion to be consistent with a portion of Ms. Greening's opinion (Tr. 31).

Third, the ALJ incorporated Ms. Greening's assessment regarding the difficulty Plaintiff has in performing complex work and dealing with others into the RFC determination. Specifically, the ALJ limited Plaintiff to the ability "to understand, remember and carry out simple instructions consistent with unskilled work, perform only simply decision making related to basic work functions, and tolerate only minor infrequent changes within the workplace" (Tr. 24). The ALJ further limited Plaintiff to only occasional contact with the general public, a limitation consistent with Ms. Greening's opinions (*Id.*). *See Goff*, 421 F.3d at 789, 791, 793 (affirming where court held GAF of 58 was inconsistent with doctor's opinion that claimant suffered from extreme limitations; GAF scores of 51-60 supported ALJ's limitation to simple, routine, repetitive work).

Fourth, the ALJ notes that Plaintiff's mental health treatment has been conservative in nature (Tr. 28, 30). "Overall, the evidence shows that the claimant has had conservative mental health treatment limited to outpatient medication management with a psychiatric nurse" (Tr. 28). *See Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir. 2006) (upholding an ALJ's determination a claimant lacked credibility due in part to "absence of hospitalizations ... limited treatment of symptoms, [and] failure to diligently seek medical care"); *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (finding that conservative treatment reduced the claimant's credibility).

Fifth, although Ms. Greening indicates Plaintiff "would have difficulty in a work environment" (Tr. 632) and Plaintiff is "still unable to work" (Tr. 633), "opinions that a claimant is disabled is a determination reserved to the Commissioner and a statement by a medical source that a claimant is disabled or unable to work does not require an automatic determination of

13

disability by the Commissioner." *Burton v. Colvin*, No. 2:14-CV-11 NAB, 2014 WL 5849424, at *4 (E.D. Mo. Nov. 12, 2014) (citing 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1)).

Finally, similar to the opinion of Dr. Glanton, Ms. Greening's opinions were in a checklist format. Accordingly, the ALJ could properly afford Ms. Greening's vague and conclusory statements only partial weight. *See Swarnes*, 2009 WL 454930, at *11 (citation omitted); *see also Wildman*, 596 F.3d at 964.

**C. The Weight Assigned Dr. Lyle Clark's GAF Score**

Finally, Plaintiff argues that although the ALJ assigned "great weight" to the assessment by Dr. Clark, the ALJ failed to discuss the observations therein and also failed to incorporate them into the RFC. Specifically, Plaintiff highlights a portion of the following language from Dr. Clark's treatment note dated January 5, 2012:

> The patient describes symptoms of a Hypomanic Episode including a change in functioning for four days or more accompanied by symptoms including talkativeness, logorrhea, jumping subjects, racing thoughts, distractibility, difficulty finishing things, working more hours, spending sprees, and taking chances. The patient reports mood swings occur several times daily.

(Tr. 488). Plaintiff argues that the ALJ does not discuss how the Hypomanic Episodes and the attendant symptoms are taken into account in the RFC (Doc. 17 at 11). However, Plaintiff misconstrues the ALJ's analysis. The ALJ afforded the GAF score of 55 assigned by Dr. Clark on December 12, 2011 "great weight," finding it "consistent with the evidence showing that the claimant has no more than moderate limitations as a result of her mental impairments" (Tr. 30). The ALJ did not otherwise address Dr. Clark's assessment. In fact, the ALJ's discussion of Dr. Clark's GAF score occurred in the context of her analysis of the GAF scores assigned to Plaintiff by Ms. Greening. As previously discussed, the ALJ incorporated some of Ms. Greening's assessment of Plaintiff's ability perform complex work and deal with others in her RFC which is

14

further supported, as the ALJ notes in her decision, by the GAF score assigned by Dr. Clark. In any case, an ALJ is not required to list each function which she includes in a claimant's RFC, followed by the specific medical evidence which supports a finding that the claimant can engage in that function. *See Davis v. Colvin*, 2015 WL 1964791, at *5 (W.D. Mo. May 1, 2015) ("SSR 96–8P does not require an ALJ to list each RFC limitation followed by the specific evidence that supports it; such a requirement would undermine the "all relevant evidence" standard and would result in duplicative discussions of the same evidence.").

## V. CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED with prejudice**.

A separate judgment shall be entered incorporating this Memorandum and Order. Dated this 27th day of March, 2017.

      /s/ Noelle C. Collins
    NOELLE C. COLLINS
    UNITED STATES MAGISTRATE JUDGE